■ In the Matter of GLENGARIFF CORPORATION, Appellant, v BOARD OF ASSESSORS OF THE COUNTY OF NASSAU et al., Respondents. (Proceeding No. 1.) In the Matter of GLENGARIFF CORPORATION, Appellant, v BOARD OF ASSESSORS OF THE CITY OF GLEN COVE et al., Respondents. (Proceeding No. 2.)—In two proceedings pursuant to Real Property Tax Law article 7 to review real property tax assessments which failed to give a partial tax exemption to the petitioner pursuant to Real Property Tax Law § 485-b, the petitioner appeals, as limited by its brief, from so much of an order of the Supreme Court, Nassau County (McGinity, J.), entered August 6, 1986, as, upon reargument, adhered to its original determination in an order dated March 24, 1986, which denied the petitioner's motion for summary judgment and granted summary judgment to the respondents.

Ordered that the order is modified, on the law, by deleting therefrom the provision which adhered to the original determination in the order dated March 24, 1986, which granted summary judgment to the respondents, and substituting therefor a provision vacating so much of the order dated March 24, 1986, as granted summary judgment to the respondents; as so modified, the order is affirmed insofar as appealed from, with costs to the petitioner, and the matter is remitted to the Supreme Court, Nassau County, for a trial.

The petitioner, the Glengariff Corporation, operates the Glengariff Health Care Center. The center consists of the Glengariff Nursing Home, and the Polar Hill Facility which utilizes 40% of its space as a nursing home and the remainder as a health-related facility (hereinafter HRF). The petitioner commenced the instant proceedings after it was denied a partial tax exemption pursuant to Real Property Tax Law § 485-b for the Poplar Hill Facility. The statute reads:

"1. Real property constructed, altered, installed or improved subsequent to the first day of July, nineteen hundred seventy-six for the purpose of commercial, business or industrial activity shall be exempt from taxation, special ad valorem levies and service charges to the extent hereinafter provided.

"2. (a) Such real property shall be exempt for a period of one year to the extent of fifty per centum of the increase in assessed value thereof attributable to such construction, alter-

ation, installation or improvement and for an additional period of nine years provided, however, that the extent of such exemption shall be decreased by five per centum each year during such additional period of nine years * * *

"5. The provisions of this section shall apply to real property used primarily for the buying, selling, storing or developing goods or services, the manufacture or assembly of goods or the processing of raw materials. *This section shall not apply to property used primarily for the furnishing of dwelling space or accommodations to either residents or transients other than hotels or motels"* (emphasis added).

The petitioner contends that it was improperly denied the exemption because the accommodations it provides to its clients are ancillary to its primary purpose of providing medical services. The respondents, on the other hand, argue that an HRF can never be subject to the exemption because its basic function is to provide accommodations to its residents. As conceded by the petitioner, the subject facility is primarily a HRF and not a nursing home. Based upon an analysis of the applicable statutory and regulatory provisions relating to HRFs and bearing in mind that tax exemption statutes are to be strictly construed *(see, County of Herkimer v Village of Herkimer,* 251 App Div 126, *affd* 279 NY 560), we conclude that the issue of entitlement to the exemption must be decided on a case-by-case basis, and the party seeking the exemption must bear the burden of demonstrating that the facility is not used primarily for dwellings and accommodations.

Public Health Law article 28 recognizes that the availability of HRFs and nursing homes is of vital concern to the public *(see,* Public Health Law § 2800). Based upon the recognition of the importance of these facilities they are extensively regulated *(see,* 10 NYCRR parts 420, 421 *et seq.).* However, the quantity and quality of the medical services to be provided by a HRF are dictated by the needs of its residents. For example, the resident of a HRF must agree to an annual physician's visit with more frequent visits only if indicated or medically necessary *(see,* 10 NYCRR 420.1 [d] [1]). Moreover, the HRF does not have to provide for physician's services as part of its basic agreement (10 NYCRR 420.1 [d] [2]). In addition, the medical staff must only be sufficient to meet the medical needs of the residents (10 NYCRR 421.1 [g] [1]). The foregoing regulatory provisions make it clear that the level of medical services that the HRF must provide depends upon the functioning level of its clientele. Other factors, while not disposi-

tive, will also aid in determining whether the HRF provides accommodations which are only ancillary to the providing of medical services. For example, the HRF may provide outpatient medical services *(see,* 10 NYCRR part 425). Moreover, the financial statements of the facility will indicate how much of the operating expenses are allocated to accommodations as compared to medical services. Thus, for all of the reasons stated herein, in order for a HRF to qualify for the exemption, it must be demonstrated that it is not used primarily for the furnishing of dwelling space or accommodations.

Based upon the record before us, we conclude that summary judgment was improperly granted to the respondents. Aside from the medical records of an allegedly representative resident of the facility, there is no evidence tending to show the level of care required by the majority of the residents and the extent of services actually provided by the petitioner. Moreover, the financial statements submitted by petitioner pertain to both the HRF and the nursing home instead of providing the relevant data for the facility seeking exemptions. We therefore determine that a trial is warranted on the issue and we remit the matter to the Supreme Court, Nassau County, for this purpose. Bracken, J. P., Weinstein, Rubin and Harwood, JJ., concur.